UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

MICHAEL ARNONE,

        Plaintiff,

    - against -

CA, INC., CA SEVERANCE PLAN, and
ANDREW GOODMAN, Plan Administrator
of the CA Severance Plan and Senior Vice
President of Human Resources of CA, Inc.,
in his official capacity,

        Defendants.

------------------------------------------------------X

**MEMORANDUM
OPINION AND ORDER**

**08 Civ. 4458 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

In his complaint, Michael Arnone asserted that CA, Inc., his former

employer; the CA Severance Plan; and Andrew Goodman, plan administrator of

the CA Severance Plan and Senior Vice President of Human Resources of CA,

Inc., each violated his pension rights under the Employee Retirement Income

Security Act ("ERISA").[1] This lawsuit addressed the fiduciary duties that

accompany a delegation of administrative functions under ERISA, as well as the

procedural protections afforded to a claimant under ERISA and Department of

---

[1]    29 U.S.C. §§ 1001-1461.

Labor regulations promulgated to facilitate compliance with the statute.  On

February 13, 2009, this Court rendered judgment in favor of Arnone and awarded

$56,693.43 in damages, as well as the fees and costs of this action.[2]  However, the

Court delayed calculation of the fee award until after submission of supplementary

filings by both parties.[3]  For the reasons stated below, this Court now awards

Arnone $56,628.25 for fees and costs incurred in this action.

## I.     FINDINGS OF FACT

Arnone first accrued substantial legal bills while exhausting

administrative remedies under the CA Severance Plan.  Arnone incurred $24,300

in fees to Larry Silverman based on 54 hours at a rate of $450 per hour.[4]

Additionally, Arnone incurred $12,738.14 in legal fees to the firm of Schlam,

Stone & Dolan, based on 3.9 hours of work by Harvey M. Stone at a rate of $525

per hour, 31 hours by Bennette D. Kramer, at a rate of $425 per hour, and .4 hours

of paralegal time at a rate of $125 per hour, less a discount of $2,534.35.[5]  A small

---

[2]     *See Arnone v. CA, Inc.*, No. 08 Civ. 4458, 2009 WL 362304, at *9 (Feb. 13, 2009).

[3]     *See id.* at *10.

[4]     *See* 2/20/09 Affirmation of Nathaniel B. Smith, plaintiff's attorney ("Smith Aff.") ¶ 16; 2/13/09 Silverman Billing Statement, Ex. 3 to Smith Aff.

[5]     *See* Smith Aff. ¶ 16; 2/18/09 Schlam Stone & Dolan LLP Billing Statement, Ex. 2 to Smith Aff.

2

portion of these hours reflect assistance to Arnone's litigation counsel.

Specifically, Silverman spent 2.5 hours in a meeting with litigation counsel, and

Kramer spent a total of 3.6 hours sending documents, speaking on the phone, and

meeting concerning litigation.[6]

After Arnone determined that litigation would be necessary, he hired

Nathaniel Smith as litigation counsel; Smith did not participate in administrative

appeals or other pre-litigation proceedings.[7]   Although the retainer between Smith

and Arnone contemplated payment on a contingent fee basis, the agreement

specified that a rate of $425 per hour would be applied if representation were to

terminate prematurely.[8]   Smith has over twenty years of experience as an attorney,

split between six years in the litigation department at Paul, Weiss, Rikfind,

Wharton & Garrison and fourteen years as a solo practitioner focusing on

employment law.[9]   Smith expended 168.3 hours on this case, from development of

the complaint through submission of the fee application.[10]   Thus if Smith had

---

[6]      *See* Silverman Billing Statement; Schlam Stone & Dolan LLP Billing Statement.

[7]      *See* Smith Aff. ¶ 12.

[8]      *See id.* ¶ 18.

[9]      *See id.* ¶¶ 5-6.

[10]      *See id.* ¶ 18; 2/19/09 Smith Invoice, Ex. 1 to Smith Aff.

charged Arnone at his hourly rate, the total bill would have been $71,527.50.[11]

Smith also incurred $2,973.25 in costs, including deposition transcripts, filing

fees, witness fees, and the cost of service of a subpoena.[12]

        This Court awarded Arnone the entirety of his disputed severance, as

well as a fine against Goodman for failure to provide Arnone with documents

related to the benefits determination.[13]  However not every legal theory advanced

by Arnone succeeded.  Specifically, this Court rejected Arnone's claim "that CA,

Inc., the CA Severance Plan, or Goodman terminated him for cause for the express

purpose of interfering with his severance rights."[14]  Moreover prior to trial, the

Court rejected Arnone's claims for compensatory and punitive damages.[15]  Finally,

not all theories advanced in the fee application are accepted in this opinion.  It is

not possible, based on the billing records submitted to the Court, to determine

precisely how many hours were expended on the rejected claims.[16]

---

[11]     *See* Smith Aff. ¶ 28A; Smith Invoice.

[12]     *See* Smith Aff. ¶ 27.

[13]     *See Arnone*, 2009 WL 362304, at *10.

[14]     *Id.* at *8.

[15]     *See* Transcript, *Arnone v. CA, Inc.*, No. 08 Civ. 4458, Docket Entry 19 (S.D.N.Y. Jan. 21, 2009).

[16]     *See* Smith Invoice (describing activities in general terms).

4

## II.   LEGAL STANDARD

### A.   Attorney's Fees

In the absence of a statutory fee-shifting provision, litigants bear their

own attorney's fees in nearly all cases.[17]  However, in most ERISA private

enforcement actions, "by a participant, beneficiary, or fiduciary, the court in its

discretion may allow a reasonable attorney's fee and costs of action to either

party."[18]  "'ERISA's attorney's fee provisions must be liberally construed to

protect the statutory purpose of vindicating' employee benefits rights."[19]

However, ERISA "authorizes a district court to award fees incurred *only after a*

*district court has assumed jurisdiction over a case*.  Thus, fees incurred in

administrative proceedings prior to filing suit in the district court are

unavailable."[20]

---

[17]    *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 (2d Cir. 2008) (citing *Alyeska Pipeline Servs. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)).

[18]    29 U.S.C. § 1132(g)(1).  In some actions brought by a fiduciary or on behalf of a plan, attorney's fees are mandatory. *See id.* § 1132(g)(2)(D).

[19]    *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 47 (2d Cir. 2009) (quoting *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 872 (2d Cir. 1987)).

[20]    *Peterson v. Continental Cas. Co.*, 282 F.3d 112, 119 (2d Cir. 2002) (emphasis added).

5

A district court maintains "considerable discretion" to establish the

proper award under a fee-shifting statute.[21]  The Supreme Court has directed

district courts to utilize the lodestar method of calculating fees.[22]  "[T]he 'lodestar'

is 'the product of reasonable hours times a reasonable rate.'"[23]  Most recently, the

Second Circuit directed district courts to include equitable considerations in the

initial determination of a reasonable rate, rather than adjusting the lodestar after

the fact to address equitable concerns.[24]  When "'a plaintiff has achieved only

---

[21]      *Arbor Hill Concerned Citizens*, 522 F.3d at 190.  *Accord Farbatko v. Clinton County*, 433 F.3d 204, 210 (2d Cir. 2005) ("The district court is in closer proximity to and has greater experience with the relevant community whose prevailing market rate it is determining.").

[22]      *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Although the Second Circuit has cautioned that "lodestar" has deteriorated to a misnomer, the Circuit acknowledged that the term is deeply entrenched in the legal lexicon and explicitly declined to order its abandonment.  *See Arbor Hill Concerned Citizens*, 522 F.3d at 190 & n.4.

[23]      *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).  In ERISA cases, district courts may use the prevailing rate for ERISA practitioners rather than general litigators as a reasonable starting point.  *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 97 (2d Cir. 2006).

[24]      *See Arbor Hill Concerned Citizens*, 522 F.3d at 190.  Specifically, the Circuit instructed district courts to consider the twelve factors addressed by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*:
             (1) the time and labor required; (2) the novelty and
             difficulty of the questions; (3) the level of skill required to
             perform the legal service properly; (4) the preclusion of

6

partial or limited success' . . . [t]he District Court may, in its discretion, 'attempt to identify specific hours that should be eliminated, or it may simply reduce the [requested] award to account for the limited success.'"[25]

Guidance from the Second Circuit concerning determination of the lodestar is somewhat in tension. The recent decision in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany* cautioned that "[t]he reasonable hourly rate is the rate a paying client would be willing to pay."[26] The Circuit also stated that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."[27] On the other hand, in *Koam Produce, Inc. v. DiMare Homestead, Inc.*, the Circuit expressly "'reject[ed] the notion that an

_____

> employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 187 n.3, 190 (citing *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717-19 (5th Cir. 1974)).

[25]     *Abrahamson v. Board of Educ.*, 374 F.3d 66, 79 (2d Cir. 2004) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-47 (1983)).

[26]     522 F.3d at 190.

[27]     *Id.*

7

award of attorneys' fees [must] be proportional to the amount of damages recovered.'"[28]  The Circuit has also rejected a "billing judgment" approach to attorney's fees and noted, "Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation."[29]

### B.    Costs

Even in the absence of a fee-shifting statute, "costs – other than attorney's fees – should be allowed to the prevailing party."[30]  Taxable costs include court reporter fees, docket fees, witness fees, and service costs.[31]

## III.   CONCLUSIONS OF LAW

As an initial matter, as noted earlier, Arnone may not recover attorney's fees incurred before "a district court has assumed jurisdiction over a

---

[28]    329 F.3d 123, 131 (2d Cir. 2003) (quoting *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 160 (2d Cir. 1992)).  A proportionality requirement may be imposed by statute. *See, e.g.*, Prison Litigation Reform Act, 42 U.S.C. § 1997e(d)(1)(B)(I).  No such requirement is present in ERISA.

[29]    *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426-27 (2d Cir. 1999) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) (plurality opinion)).

[30]    Fed. R. Civ. P. 54(d)(1).

[31]    *See* 28 U.S.C. § 1920.

8

case."[32] Like any ERISA claimant, Arnone had to exhaust administrative remedies before initiating litigation, even if those remedies ultimately proved futile.[33] Although a prerequisite to litigation, pursuit of administrative remedies is distinct from crafting a complaint or researching jurisdiction.[34] Therefore, Arnone is not entitled to attorney's fees for the bulk of work done by Silverman or the firm of Schlam, Stone & Dolan.

Turning to fees related to litigation, I first find that Smith's billing rate of $425 per hour is reasonable, based on Smith's experience and expertise, as well as Arnone's acceptance of the rate in the retainer agreement. Moreover, I find that $425 per hour is a typical rate for experienced labor lawyers in this district.[35] Therefore, I find the billing rates of $450 and $425 used by Silverman and Kramer respectively to be appropriate.

However, the total number of hours billed must be reduced in light of

---

[32] *Peterson v. Continental Cas. Co.*, 282 F.3d 112, 119 (2d Cir. 2002) (emphasis added).

[33] *See Paese v. Hartford Life Accident Ins. Co.*, 449 F.3d 435, 445-46 (2d Cir. 2006).

[34] *See Peterson*, 282 F.3d at 121 n.5.

[35] *See, e.g.*, *Sheehan v. Metropolitan Life*, 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) ($425 per hour for an "experienced and effective" ERISA attorney); *Winkler v. Metropolitan Life Ins. Co.*, No. 03 Civ. 9656, 2006 WL 2347826, at *1 (S.D.N.Y. Aug. 10, 2006).

9

defendants' successful defense of multiple claims.  In light of Arnone's partial

success, I find that 120 hours is a reasonable basis for the lodestar calculation for

Smith's work.  In addition, I find the 2.5 hours spent by Silverman and the 3.6

hours spent by Kramer to be reasonable expenditures of time, given that their

development of the facts of this case undoubtedly assisted Smith in the litigation.

Therefore, this Court awards attorney's fees of $51,000 for work

performed by Smith, $1,125 for work performed by Silverman, and $1,530 for

work performed by Kramer.  The total accepted fees are $53,655.  Moreover, all

costs asserted by Smith are recoverable.  The total accepted costs are $2,973.25.

I note that a "reasonable" client would not pay fees and costs

amounting to nearly the entire judgment.  However, given the liberal construction

afforded to ERISA's attorney's fee provision, the statutory purpose of promoting

vindication of employee rights, and the deterrent effect against employer

misconduct, I find the total reasonable in this case.  Arnone is awarded $56,628.25

for fees and costs.

## III.   CONCLUSION

The Clerk of the Court is directed to close this motion (Docket

Number 22) as well as Docket Number 25, which has been resolved.  The Clerk is

additionally directed to prepare a judgment consistent with the Opinion and Order

10

of February 13, 2009 and this Memorandum Opinion and Order and to close this

case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              March 6, 2009

11

- Appearances -

**For Plaintiff:**

Nathaniel B. Smith, Esq.
Law Office of Nathaniel B. Smith
111 Broadway, Suite 1305
New York , New York 10006
(212) 227-7062

**For Defendants:**

Jamie Mark Brickell, Esq.
Anna E. Hutchinson, Esq.
Pryor Cashman LLP
410 Park Avenue
New York , New York 10022
(212) 326-0869